SHEAN *v.* UNITED STATES FIDELITY & GUARANTY CO.

1. Principal and Surety—Estoppel.
   Sureties are estopped to deny facts recited in their obligations, whether true or false.

2. Same—When Surety Bound.
   Surety which adopts its own wording on its bond is bound thereby.

3. Estoppel—Definition.
   Doctrine of estoppel rests upon inequity of permitting one to allege existence of facts which by his own conduct he has induced another to believe did not exist.

4. Same—When Doctrine of Estoppel Not Applicable.
   There can be no estoppel where one is not deceived or misled, but acts upon his own judgment and with knowledge of facts.

5. Principal and Surety—Estoppel—Surety Not Liable Where Obligation Not Within Terms of Bond.
   Surety company, which issued fidelity bond conditioned on sales manager's faithful performance of his duties as such, is not estopped from denying liability as guarantor of payment for goods sold him on time, where it had no knowledge of facts other than those contained in bond, which is conditioned in accordance with obligee's directions, although, prior to issuance of bond, relationship of sales manager was ended and he became purchaser of goods at fixed prices on time.

Appeal from Ingham; Carr (Leland W.), J. Submitted April 19, 1933. (Docket No. 20, Calendar No. 36,998.) Decided June 5, 1933.

Assumpsit by Charles Shean, warden of the Michigan reformatory at Ionia, against United States

Fidelity & Guaranty Company, a Maryland corporation, on a bond. Judgment for defendant. Plaintiff appeals. Affirmed.

*Paul W. Voorhies,* Attorney General, and *Wendell Brown,* Assistant Attorney General, for plaintiff.

*Payne & Payne* and *Cornelius Hoffius* (*R. Van Kovering,* of counsel), for defendant.

North, J. Plaintiff seeks recovery from defendant as surety on a bond. Upon hearing before the circuit court without a jury, judgment was entered for defendant. Plaintiff has appealed.

The plaintiff is the warden of the Michigan reformatory at Ionia, and the bond in suit runs to "the State prison commission for the use and benefit of the Michigan reformatory at Ionia, Michigan." The reformatory manufactured furniture and other articles of merchandise. Prior to the execution of the bond in suit (April 5, 1926) one John A. Huban was employed by plaintiff to sell the reformatory's products on a commission basis. He continued in such employment for some months and until some time in January, 1926. During that month an accident at the prison factory interrupted production, and Huban ceased operating on a commission basis. Later the reformatory representatives entered into an agreement with Huban under which the furniture was to be sold to him, doing business as the Huban Furniture Company, at fixed prices and invoiced on 60 days' time for payment. Shipments to the Huban Furniture Company began about the date of the bond or possibly a little before. On March 22, 1926, the chairman of the prison commission, acting for plaintiff, mailed to Huban a form of bond that was

desired. The bond in suit is conditioned in accordance with plaintiff's directions. Parties to this suit agree there was no change in the relationship between plaintiff and Huban subsequent to the execution and delivery of the bond, which was conditioned as follows:

"WHEREAS, the above-named principal, has been appointed salesman in charge of sales in connection with products manufactured by the Michigan reformatory at Ionia, Michigan, now therefore, the conditions of this obligation are such, that if the above-named principal shall pay, deliver over, and account for all money, securities, and property coming under his control, by virtue of his employment and shall fully indemnify the State prison commission against loss by reason of fraud, dishonesty, forgery, theft, or embezzlement, then this obligation shall be void, otherwise to remain in full force and effect."

Huban's relationship with plaintiff continued until January, 1927, at which time he owed plaintiff for merchandise sold, shipped, and invoiced to the Huban Furniture Company, $14,194.99. This suit was instituted to recover from the surety the amount so due from Huban to plaintiff with interest thereon. The defense urged is that the bond is only a fidelity undertaking, not a guaranty of payment for goods sold, and that the obligation which plaintiff seeks to enforce is not within the terms of the bond. As against this defense, plaintiff contends that defendant is estopped to deny the recital in the bond that the principal (Huban) was "salesman in charge of sales," etc.

The general rule of estoppel as against a surety on a bond is stated in former decisions of this court.

"It is the established rule that sureties are estopped to deny the facts recited in their obliga-

tions, whether true or false. Brandt, Suretyship and Guaranty (1st Ed.), §§ 29, 30." *Brockway* v. *Petted*, 79 Mich. 620, 627 (7 L. R. A. 740).

"A recital in a bond concludes the parties as an admission of the facts recited. 2 Amer. & Eng. Enc. Law (1st Ed.), p. 464." *Healy* v. *Newton*, 96 Mich. 228, 232.

See, also, *Kirkpatrick* v. *Phillips*, 162 Mich. 251.

Appellant's contention in this regard must be viewed in the light of the letter (Exhibit 1) written to Huban by the chairman of the State prison commission specifying the terms of the bond, in part as follows:

"That we, John A. Huban of Grand Rapids, Michigan, as principal, and the bonding company are bound unto the State prison commission for the use and benefit of the Michigan reformatory at Ionia, Michigan, in the sum of $25,000. Whereas, the above bounden *John A. Huban has been appointed as salesman in charge of the sales* of such furniture or other articles, as may be agreed upon at the office of the Michigan reformatory at Ionia, Michigan. Now, therefore, the condition of this obligation is such, that if the said John A. Huban shall pay, deliver over or properly account for, any and all moneys, papers, securities, goods, and property of any kind coming into his hands, or under his control, *by virtue of said employment or position;* shall at all times keep fully indemnified said employer against loss, costs, damages, and expenses, paid or sustained, by reason of any fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, act, neglect, or default on his part; *and shall well, faithfully and honestly perform all the duties of his said employment, and position,* then this obligation to be void, otherwise to remain in full force and effect."

While the above recital and conditions were not literally copied in the bond, clearly they were em-

bodied therein and covered thereby. The bond in these respects complied with the specific directions given by plaintiff's representatives. On this phase of the record, appellee's contention is thus outlined in its brief:

"These letters (Exhibits 1 and 2) show how Porter and Klein (members of the prison commission) with superior knowledge of the facts regarding the relationship with Huban dictated the recital in the bond which plaintiff now claims defendant is estopped to deny. They were written by the very men with whom Huban was dealing in his negotiations for sale of furniture manufactured by the prison industries. * * * This letter was the means by which defendant learned how the bond should be worded. Huban took this letter direct to the defendant's agent. Surely, plaintiff is not entitled to claim estoppel under such circumstances. The letter was a direct representation from plaintiff's agent that Huban was appointed *sales manager.* * * *

"Plaintiff dictated the terms of the bond sued upon and with superior knowledge of the facts represented that Huban was its sales manager. Defendant agreed to act as surety for loss resulting from employment as sales manager. Certainly defendant is not estopped to show that the situation entirely differed from that represented and set out in the bond. * * *

"We have the defendant misled to its injury and disadvantage, since it became surety on a bond in reliance upon this misrepresentation. For these reasons there is an equitable estoppel which operates to defeat the plaintiff's claim for a technical estoppel by reason of the recital in the bond."

There is no dispute in the record about the facts on which appellee's defense is based. The State prison commission by means of letters written to

Huban relative to procuring a bond, one of which (Exhibit 1) was presented by him to defendant's agent, clearly and specifically required a bond which would indemnify plaintiff against misconduct of Huban while employed as sales manager for the prison products. The record also discloses that during the period the bond was being negotiated plaintiff was contemplating a change in the plan whereby Huban had been operating as sales manager to one under which the prison products would be sold outright to him. This change was consummated before the delivery of the bond. It goes without saying that the breach of a fidelity bond in form such as is here in suit results in a very different situation than in case of breach of a bond guaranteeing payment of the purchase price of goods sold to the principal. The breaching of a bond of the former type ordinarily, if not universally, leaves the one guilty of the breach liable to criminal prosecution, and thereby the probability of such a breach is materially minimized; but not so of a bond conditioned for the payment of goods purchased. Since plaintiff specifically demanded and accepted a bond conditioned to cover the one liability and not the other it cannot be urged that defendant is estopped to plead such fact in defense of a suit on the bond.

"Estoppel against estoppel—The doctrine known as estoppel against estoppel is that two estoppels may destroy each other, or, as otherwise expressed, one estoppel may set another at large. So, estoppels by deed may neutralize each other, and an estoppel *in pais* may operate to prevent the setting up of an estoppel by deed and *vice versa*." 10 R. C. L. p. 841.

Had defendant, with full knowledge of the relationship of the principal in the bond to the plaintiff, determined and fixed the condition of the bond, a

very different case would be presented, and the doctrine of estoppel might well be invoked. A surety which adopted its own wording on its bond is bound thereby. *City of Detroit, for use of Watson,* v. *Blue Ribbon Auto Drivers' Ass'n,* 254 Mich. 263 (74 A. L. R. 1306).

But the facts here involved present a different case, and to apply the doctrine of estoppel under such circumstances would clearly result in a miscarriage of justice. The doctrine of estoppel rests upon the inequity of permitting one to allege the existence of facts which by his own conduct he has induced another to believe did not exist. *Hubbard* v. *Shepard,* 117 Mich. 25 (72 Am. St. Rep. 548). To entitle a party to insist upon an estoppel, he must show that the other party has done something, or represented something, which has had the effect of deceiving and misleading him, and which would render it inequitable to enforce against him the alleged right of such other party. *Crane* v. *Reeder,* 25 Mich. 303. There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up. *Palmer* v. *Williams,* 24 Mich. 328; *DeMill* v. *Moffat,* 49 Mich. 125; *Meisel* v. *Welles,* 107 Mich. 453. There can be no estoppel where one is not deceived or misled, but acts upon his own judgment and with knowledge of the facts. *Northern Michigan Lumber Co.* v. *Lyon,* 95 Mich. 584; *Thirlby* v. *Rainbow,* 93 Mich. 164. And a party cannot invoke the aid of the doctrine of equitable estoppel where it appears that the facts were known by both or that both had the same means of ascertaining the truth. *Sheffield Car Co.* v. *Constantine Hydraulic Co.,* 171 Mich. 423 (Ann. Cas. 1914 B, 984).

The facts presented by this record are such that the asserted estoppel cannot be successfully urged

against defendant. It conclusively appears from this record that Huban's breach of duty or obligation in consequence of which recovery is sought is not within the terms of the bond, and therefore there can be no recovery on the bond. It was so adjudged in the circuit court. In appellant's brief other reasons assigned in support of this appeal are presented. They have been considered but they are either without merit or are not of such a character as would affect the outcome of the case.

Judgment is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred. POTTER, J., did not sit.